UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA ANNE H.,

                                        Plaintiff,

v.                                                              6:20-CV-397 (TWD)

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       KENNETH R HILLER, ESQ.
  *Counsel for Plaintiff*                 JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue - Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               AMY BLAND, ESQ.
  *Counsel for Defendant*
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Laura Anne H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act.  (Dkt. No. 1.)  This case has proceeded in accordance with General

Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of

Social Security benefits.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

disposition of this case by a Magistrate Judge.  (Dkt. No. 7.)  Presently before the Court are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 10, 13.)  For the following reasons, Plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is reversed and remanded for further administrative proceedings.

## I.   BACKGROUND

Plaintiff was born in 1982 and has a high school education.  (Administrative Transcript[1] at 186.)  She has a good work history as an automotive title clerk and waitress.  *Id*. at 168-83, 186, 213-20.  On March 18, 2017, Plaintiff applied for DIB alleging disability beginning on June 29, 2016, due to degenerative disc disease, seizures, anxiety, broken vertebra in neck, post-traumatic stress disorder, attention deficit hyperactivity disorder ("ADHD"), depression, arthritis in neck, and cervical spondylosis.  *Id*. at 185.  Her date last insured is December 31, 2021.  *Id*. at 197.  The application was denied and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 72-88, 90-91.  ALJ Jeremy G. Eldred held a hearing on January 4, 2019, at which Plaintiff, represented by a non-attorney, and a vocational expert appeared and testified. *Id*. at 47-71.

On February 1, 2019, the ALJ found that Plaintiff was not disabled from June 28, 2016, through the date of the decision.[2]  *Id*. at 13-21.  Relevant to this action, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine (status post-surgical fusion to C3 to C6), myofascial pain syndrome, and pseudoseizures.  *Id*. at 15.  The

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
[2]  To determine whether a claimant is disabled, the Commissioner uses a five-step evaluation that places the ultimate burden of persuasion on the claimant to prove disability and produce supporting evidence.  *See* 20 C.F.R. §§ 404.1512(a), 404.1520(a)(4); *Cichocki v. Astrue*, 729 F.3d 172, 175 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

ALJ determined Plaintiff's medically determinable mental impairments of anxiety and ADHD, considered singly and in combination, do not cause more than minimal limitations on her ability to perform basic mental work activities. *Id*. at 15-16. Next, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she is unable to climb ladders, ropes, or scaffolds, is unable to work at unprotected heights or with moving mechanical parts, and is unable to operate machinery or a motor vehicle. *Id*. at 17. Because she was capable of performing her past relevant work as an automobile title clerk as it is generally performed in the national economy, the ALJ determined Plaintiff was not disabled.[3] *Id*. at 17-21. On February 3, 2020, the Appeals Council denied Plaintiff's request for review, *id*. at 4-9, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

In support of reversal, Plaintiff raises two issues: (1) whether the RFC finding is unsupported by substantial evidence; and (2) whether the consistency finding is unsupported by substantial evidence. (Dkt. No. 10.) Defendant contends substantial evidence supports the ALJ's RFC finding and assessment of the subjective symptom allegations. (Dkt. No. 13.)

## II.    DISCUSSION

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d. 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

---

[3] If the claimant maintains the RFC to do past relevant work, the claimant will be found not disabled. 20 C.F.R. § 404.1560(b)(3).

(2d. Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence.  *Johnson*, 817 F.2d at 986.

> **B.     The ALJ's RFC Determination**

A claimant's RFC is defined as "'what an individual can still do despite his or her

limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis.'"  *Pardee v. Astrue*, 631

F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)

(citation omitted)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."

*Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny

impairment-related limitations created by an individual's response to demands of work . . . must

be reflected in the RFC assessment.'"  *Hendrickson v. Astrue*, No. 5:11-CV-927 (ESH), 2012

WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15,

1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to

enable [the Court] to decide whether the determination is supported by substantial evidence."

*Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

> **1.     Plaintiff's Subjective Symptoms**

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms.

*See* 20 C.F.R. § 404.1529.  First, the ALJ must determine whether, based on the objective

medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged."  *Id.*  Second, if the medical evidence establishes the

existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit plaintiff's ability to do work. *Id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ is not obligated to credit a plaintiff's testimony about her limitations and symptoms, but has discretion to evaluate the subjective complaints in light of the evidence in the record.  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010).  Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. at 18-20.)  For reasons outlined below, the ALJ properly assessed Plaintiff's subjective statements and his determination that her complaints were not consistent with the record as a whole was supported by substantial evidence.

Here, and as discussed *infra*, the ALJ thoroughly summarized the objective medical evidence in the record, highlighting the objective imaging and intact physical examination

findings, noted Plaintiff's treatment and her related improvement, discussed the medical opinions of record, and noted Plaintiff's daily activities.  (T. 17-20.)

Plaintiff argues the ALJ erred in evaluating her subjective complaints because the ALJ "did not accurately summarize Plaintiff's activities, and the ALJ failed to explain how the activities are consistent with full-time work."  (Dkt. No. 10 at 21.)  Plaintiff's argument is misplaced.  In referring to Plaintiff's activities, the ALJ cited evidence in the record that Plaintiff took care of her three children, was independent in her daily activities, did crafts, wrote in a journal, and made homemade gifts.  (T. at 19, 60, 204, 678, 705, 842, 923, 956, 1412.)  The Regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a plaintiff's symptoms.  20 C.F.R. § 404.1529(c)(3).  Therefore, contrary to Plaintiff's assertion, the ALJ did not find Plaintiff's activities demonstrated her ability to perform work on a full-time sustained basis, rather, the ALJ properly determined Plaintiff's activities were inconsistent with her allegation of disabling symptoms.  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (citing *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014)).  Therefore, the ALJ properly considered Plaintiff's activities as one factor in his overall evaluation of Plaintiff's subjective complaints.

Plaintiff also cites several pieces of evidence in the record that she claims contradict the ALJ's assessment of her subjective allegations, (*see* Dkt. No. 10 at 22-23, citing T. at 415, 419, 420, 425, 958, 985, 992, 994, 996, 998, 1391, 1392, 1393, 1410), while Defendant cites several pieces of evidence in the record to support the ALJ's assessment, (*see* Dkt. No. 13 at 19-20, citing T. at 60, 202, 209, 425, 427, 678, 705, 842, 882, 923, 984, 988, 994, 996, 998).  Upon reviewing the record with particular attention to the evidence that both parties cite, it is clear that,

although the Court or another ALJ might have weighed the evidence differently or reached a different determination on Plaintiff's subjective complaints, there is substantial evidence in the record to support the ALJ's finding.  *See Clark v. Comm'r of Soc. Sec.*, No. 7:13-CV-256 (FJS), 2016 WL 1057047, at *6 (N.D.N.Y. Mar. 14, 2016) (stating that, "to the extent that [p]laintiff points to evidence in the Administrative Record that reasonably might support a conclusion that [plaintiff] is disabled, 'whether there is substantial evidence supporting the appellant's view is not the question' on appeal"); *see also Debra T. v. Comm'r of Sec. Sec.*, No. 8:16-CV-0157 (TWD), 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (stating that "[t]he Court will not now reweigh evidence which was before the ALJ" (citations omitted)).

Contrary to Plaintiff's contentions, the ALJ did not mischaracterize the evidence or selectively parse the record for evidence to support his finding; rather, he carried out his duty to weigh the evidence of record and resolve conflicts among evidence therein.  *See Michelle M. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1065 (TWD), 2020 WL 495170, *8 (N.D.N.Y. Jan 30, 2020) (collecting cases).  Again, it is not for the Court to reweigh that evidence based on Plaintiff's disagreement with the result.  *Id.*

Further, to the extent Plaintiff claims that the ALJ "cherry-picked" the evidence and should have discussed the evidence supporting her claim more thoroughly, the ALJ was not required "to discuss every piece of evidence submitted" or "state on the record every reason justifying [his] decision."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). While there may be some evidence in the record to support Plaintiff's position, where "evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).

Plaintiff next faults the ALJ for failing to identify reasons for rejecting her allegations related to her cervical spine impairment and seizures.  (Dkt. No. 10 at 23-25.)  However, as discussed below, the ALJ relied on the medical opinion evidence from consultative medical examiner, Kautilya Puri, M.D., and State agency medical consultant, D. Miller, D.O., the intact examination findings, and Plaintiff's positive response to treatment.  (T. at 18-20.)  The ALJ also referenced Plaintiff's testimony that she was not having as many seizures and that she was able to do her past job with the seizure disorder.  Id. at 17, 56-57.  Indeed, the only limitations Plaintiff attributed to her seizure disorder were inability to operate machinery and drive, both of which were incorporated by the ALJ into his RFC finding.  *Id*. at 17, 55-56.[4]

Lastly, to the extent Plaintiff faults the ALJ for not considering every factor listed in 20 C.F.R. 404.1529(c)(3)(i)-(vii), (*see* Dkt. No. 10 at 20), the ALJ was clearly aware of his obligations to evaluate Plaintiff's subjective complaints, and the Court finds no error that would require remand.  (T. at 18, referencing 20 C.F.R. § 404.1529 and SSR 16-3p.)  Further, the Court is able to glean from both the ALJ's decision and the record that he appropriately considered the regulatory factors when assessing Plaintiff's subjective complaints, including Plaintiff's daily activities, her medical record and treatments, including medication, and opinion evidence.  *Id*. at 18-20; *see Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (no error where ALJ considered only three of seven regulatory factors); *see also Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth

---

[4]  The Court further finds the ALJ reasonably assigned the disability-related reports from Nurse Practitioner Susan Griffing from March and May 2016, little weight because they were issued before the alleged onset date of disability and, in any event, indicate Plaintiff had the capacity to return to work.  (T. at 20, 1325-27, 1341-43.)  *See also See Taylor v. Colvin*, No. 14-cv-0928 (GTS), 2016 WL 1049000, at *5 (N.D.N.Y. Mar. 11, 2016) (an opinion from a non-acceptable medical source is not entitled to any particular weight).

in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently clear and specific to conclude that he considered the entire evidentiary record."); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (ALJ need not explicitly address each of the seven factors in assessing plaintiff's allegations; instead, the ALJ's reasoning must be precise and supported by the record).

Ultimately, even accepting Plaintiff's contention that some treatment notes and findings weigh in her favor, as discussed herein, the ALJ carefully considered Plaintiff's subjective symptomology and substantial evidence supports his conclusion.  Plaintiff's arguments in this regard again invite the Court to reweigh the evidence and second-guess the ALJ's conclusions related to her symptoms.  However, the Court is not permitted to do so when the record demonstrates substantial evidence supports the ALJ's decision.  *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010).  According, remand is not warranted on this ground.

## 2.      Sedentary Work

Plaintiff also argues the ALJ's RFC finding was not supported by substantial evidence because he relied on Dr. Puri's opinion, which was "stale, vague, and did not indicate functioning akin to sedentary work."  (Dkt. No. 10 at 14.)  For the reasons outlined below, substantial evidence supports the physical RFC finding.

In formulating Plaintiff's physical RFC, the ALJ relied on the medical opinion evidence in the record.  (T. at 17-20.)  On May 17, 2017, Dr. Puri examined Plaintiff and provided a medical source statement.  *Id*. at 408-11.  Dr. Puri noted Plaintiff's complaints of cervical neck pain since 2013, a 2016 anterior cervical discectomy with fusion at C3-4, C5-6 levels, and complaints of "sharp pains that increase with lifting and overhead reaching, twisting motions, and decrease with medication and rest."  *Id*. at 408.  Plaintiff reported falling in January 2017,

and was told she had fractures at the C6 level.  *Id.*  She was treated with a collar and stated her pain increases with lifting and overhead reaching.  *Id.*

During the examination, Plaintiff was in no acute distress, had normal gait, could stand on heels and toes (but indicated she could not walk on them), could squat (albeit mildly decreased), had normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and could rise from her chair without difficulty.  *Id.* at 409. She exhibited no abnormalities with her skin and lymph nodes; head and face, eyes; ears, nose, and throat; neck, chest and lungs; heart; and abdomen.  *Id.* at 409-10.

On her musculoskeletal examination, Plaintiff's cervical spine was in a collar so it was not assessed, but otherwise Plaintiff had no abnormalities—full range of motion in the lumbar spine; negative straight leg raise test bilaterally; full range of motion in the shoulders, elbows, forearms, and wrists; full range of motion in the hips, knees, and ankles; and stable and nontender joints with no redness, heat, swelling, or effusion.  *Id.* at 410.  Plaintiff's neurological examination was also normal—1 to 2+ reflexes, no sensory deficits, and intact strength (5/5) in the upper and lower extremities.  *Id.*  Plaintiff's extremities showed no signs of cyanosis, clubbing, or edema, her pulses were physiologic and equal, there were no significant varicosities or trophic changes, and there was no muscle atrophy evidence.  *Id.*  Further, Plaintiff's hand and finger dexterity were intact with 5/5 bilateral grip strength.  *Id.*  As to daily activities, Plaintiff reported that she could do some childcare, shower, dress, watch television, and go out.  *Id.* at 409.

Based on this examination, Dr. Puri opined Plaintiff did not have any objective limitations in communication or fine or gross motor activity; had mild limitations to overhead reaching; and had no objective limitations to her gait.  *Id.* at 410.  Dr. Puri determined Plaintiff

had moderate limitations to her activities of daily living and lifting weights. *Id*. at 411. Dr. Puri recommended that Plaintiff not work from heights, with heavy machinery, or be allowed to drive. *Id*.

The ALJ afforded Dr. Puri's opinion significant weight. *Id*. at 19. The ALJ reasoned the opinion was supported by the doctor's examination, including a normal gait and stance, no sensory deficits, and no strength limitations despite the seizure history reported by Plaintiff. *Id*. As outlined below, Dr. Puri's opinion was neither too vague nor stale, and overall supported the ALJ's RFC determination for reduced range of sedentary work.

In general, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). A medical opinion may be stale if it does not account for a plaintiff's deteriorating condition. *See Maxwell H. v. Comm'r of Soc. Sec.*, 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020); *Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). Overall, remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence. *See Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642 (2d Cir. 2020). Here, subsequently submitted evidence did not directly contradict Dr. Puri's opined limitations and the ALJ analyzed the more recent evidence of Plaintiff's allegations of pain, treatment notes, imaging, and subsequent procedures. (T. at 18-19.)

As the ALJ discussed, in September 2016, Plaintiff underwent an anterior cervical discectomy and fusion.  *Id*. at 18-19, 580-82, 586.  During the months following surgery, Plaintiff still exhibited tenderness and reduced range of motion due to complaints of pain, but other examination findings remained intact—negative Spurling and Lhermitte's sign; intact shoulder, elbow, and wrist flexion and abduction; intact grip strength; intact sensory; and intact reflexes.  *Id*. at 260-261, 265.  An MRI on January 13, 2017, showed stable post-operative changes—no evidence of bony injury; stable mild degenerative bony change of the uncovertebral joints and facet joints with mild bilateral neural foraminal stenosis, which is greater on the right; stable mild lower cervical levo-flexion; and no evidence of subluxation or dislocation with flexion and extension.  *Id*. at 19, 560-61.  As noted, on January 22, 2017, Plaintiff sustained a fall, which resulted in C6 fractures as shown in a CT scan.  *Id*. at 365-83, 555-56.  Plaintiff was kept in a neck collar and a subsequent CT scan performed on March 20, 2017, showed evidence of healing.  *Id*. at 545, 556.  Plaintiff was also given steroid injections to treat her neck pain.  *Id*. at 963-71.  Further, while a CT scan in July 2017 showed some subtle increase in the distance between the upper cervical plate at the C3 level and the anterior cortex of C3, which was slightly worse as compared with her prior studies, *id*. at 536-39, subsequent imaging of the cervical spine showed no acute findings.  *Id*. at 1363.

In short, Dr. Puri's opinion was not rendered stale by Plaintiff's subsequent treatment and surgeries.  Although Plaintiff reported increased pain and reduced range of motion at times after Dr. Puri's examination, as discussed above, the ALJ found her symptoms not entirely consistent with the record as a whole.  Moreover, Plaintiff neither demonstrated additional associated functional limitations that undermine Dr. Puri's opinion, nor identified any relevant evidence post-dating Dr. Puri's opinion that the ALJ failed to consider.  *See, e.g.*, *Abate v. Comm'r of Soc.*

*Sec.*, No. 1:18-CV-0266, 2020 WL 4597315, *6 (W.D.N.Y. 2020) (finding subsequent surgery and spinal impairment did not render the consultative examiner's opinion stale); *Johnson v. Comm'r of Soc. Sec.*, No. 1:19-CV-0706, 2020 WL 5104550, *8 (W.D.N.Y. 2020) ("Here, although the consultative report at issue was written prior to [p]laintiff's surgery and [motor vehicle accident], it was not stale because, contrary to what [p]laintiff maintains, there is substantial evidence (normal clinical findings) to support the ALJ's determination that [p]laintiff's condition did not worsen following the consultative exam.  Moreover, the problems that [p]laintiff complained about at the consultative examination were the same problems that she complained about following the [motor vehicle accident], namely, neck and back pain.").

Next, Plaintiff challenges Dr. Puri's assessment because it did not address the ability to sit, stand, walk, lift, carry, push and pull and "vaguely" indicated that Plaintiff had "moderate limitations to her activities of daily living on examination today and lifting weights."  (Dkt. No. 10 at 15, citing T. at 410-11.)

As to the lack of a function-by-function assessment, as outlined herein, the ALJ, not a medical source, is responsible for determining Plaintiff's RFC and, in this case, the record as a whole supports the ALJ's RFC for a reduced range of sedentary work.  20 C.F.R. § 404.1546(c). The Second Circuit has held that where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Thus, an

RFC determination is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation. *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020); *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ's RFC determination related to plaintiff's lifting requirement, while not directly supported by a medical opinion, was supported by an assessment from which the ALJ could infer that Plaintiff could perform the lifting requirement). Here, contrary to Plaintiff's assertions, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination. *Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2021).

Further, a consultative examiner's use of the term "moderate" does not automatically render his opinion too vague to be reliable. *Jeffrey A. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1473 (CFH), 2020 WL 1234867, at *7-8 (N.D.N.Y. Mar. 13, 2020) (collecting cases); *Josua S. v. Comm'r of Soc. Sec.*, No. 6:19-CV-1434 (ML), 2021 WL 105769, at *7 (N.D.N.Y. Jan. 11, 2021). For example, such an opinion is not impermissibly vague where the conclusions are well supported by an extensive examination. *See, e.g.*, *Waldau v. Astrue*, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012) (finding consultative examiner's findings of "moderate" physical limitations well supported by his findings regarding plaintiff's gait, range of motion in extremities, grip strength, and finger dexterity); *Sweeting v. Colvin*, No. 12-CV-0917 (DNH/CFH), 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as

consultative examiner made specific findings based on physical examination of plaintiff); *see also Caci v. Comm'r of Soc. Sec.*, No. 6:18-cv-6533, 2020 WL 43512, at *2 (W.D.N.Y. Jan. 2, 2010) (finding terms such as "mild" and "moderate" were not vague where they were supported by examination findings).  Thus, Dr. Puri's examination report, in its entirety, provides support for the ALJ's RFC finding that Plaintiff could do a limited range of sedentary work, the least physically demanding of the work categories.  Additionally, the ALJ assigned some weight to the June 6, 2017, opinion of State agency medical consultant D. Miller, D.O., who reviewed the record and concluded that Plaintiff could perform light work (which also inherently includes the ability to perform sedentary work).  (T. at 20, 78-79.)

It is well-established that a consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record.  *Grega v. Saul*, 816 F. App'x 580, 582-83 (2d. Cir. 2020) (summary order) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *see also Reed v. Comm'r of Soc. Sec.*, No. 5:16-CV-1134, 2018 WL 1183382, at *5 (N.D.N.Y. Mar. 6, 2018) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").  Reliance on these opinions is particularly appropriate where, as in this case, there is no conflicting opinion from a treating physician.  *See Annabi v. Berryhill*, No. 16-CV-9057 (BCM), 2018 WL 1609271, *17 (S.D.N.Y. Mar. 30, 2018) (quoting *Hooper*, 199 F. Supp. 3d at 815-16 (S.D.N.Y. 2016) (quoting 20 C.F.R. § 404.1519)).

Although there is evidence in the record post-dating the opinions of Drs. Puri and Miller, there is no opinion evidence in the record directly contradicting the physical limitations provided by these doctors and the ALJ discussed the subsequent medical records, imaging and objective

findings, which eventually showed improvement after Plaintiff's cervical spinal cord stimulator was implanted and revised.  (T. at 18-19.)  *See Murphy v. Comm'r of Soc. Sec.*, 6:16-CV-1268 (GTS/WBC), 2017 WL 8895352, *8 (N.D.N.Y. Oct. 24, 2017) (affirming ALJ's reliance on non-examining physicians' opinions where there was subsequent evidence added after their review but those records contained similar findings as the earlier records and did not indicate the plaintiff's condition worsened).

Indeed, a review of the relevant treatment notes after Plaintiff's 2016 cervical spine surgery reveals numerous objective findings consistent with Dr. Puri's findings/opinion as well as Dr. Miller's opinion, such as intact reflexes (T. at 261, 265, 518, 532, 536, 542, 570, 873, 924, 936, 941, 948, 960, 1353, 1359, 1380); normal sensation (*id*. at 61, 375, 410, 494, 517-18, 532, 536, 542, 738-44, 793, 795, 849, 852, 872-73, 875, 878, 924, 936, 941, 948, 960, 1353, 1356, 1358-59, 1379-80);[5] normal muscle tone and/or bulk (*id*. at 517-18, 532, 536, 542, 570, 578, 735, 872-73, 1353, 1356, 1358, 1379); normal gait (*id*. at 260, 264, 409, 518-19, 524, 526, 532, 536, 542, 570, 685, 712, 845, 847-48, 851, 873, 883, 923, 929, 936, 941, 948, 960, 1359-60, 1369, 1371, 1380, 1385); intact range of motion in the upper extremities (id. at 410, 517, 532, 536, 542, 569-70, 872, 1353, 1356, 1358, 1379); intact range of motion in lower extremities (*id*. at 410, 518, 873, 1356, 1358, 1380); intact strength in upper and lower extremities (*id*. at 261, 265, 410, 517-19, 524, 526, 532, 536, 542, 569-70, 793, 795, 872-73, 878, 924, 1353, 1356, 1358, 1360, 1369, 1371, 1379-80);[6] and negative straight leg raise (*id*. at 410, 682).

As the Commissioner points out, these notes add additional support for a sedentary RFC. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (affirming ALJ's RFC for

---

[5]  *But see* T. at 265 (reduced on right), 684, 753 (tingling/numbness on right).
[6]  *But see* T. at 948, 960 (elbow 4/5).

sedentary work where evidence showed Plaintiff could "stand and walk without difficulty" and had "full lower extremity strength"); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (treatment notes revealing "essentially normal neurological function as evidenced by full or nearly full motor strength, symmetrical reflexes, and intact sensation" support ALJ's finding that plaintiff could perform sedentary work).

Finally, Plaintiff's daily activities provide additional support for the sedentary RFC. *See Lamorey v. Barnhart*, 158 F. App'x at 361, 363 (2d Cir. 2006) ("It is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities."). Plaintiff repeatedly stated that she was independent in her daily activities (T. at 678, 705, 842, 882, 923), and she also took care of her three children, did crafts, made homemade gifts, and wrote in a journal. *Id*. at 60, 204, 956, 1412. Plaintiff also continued to do light housework. *Id*. at 60, 994, 996. While some notations indicate neck and shoulder pain with these activities (*id*. at 60-61, 998, 1000), other records report only a slight limitation in activity tolerance. *Id*. at 842. Plaintiff has failed to show any error with the ALJ's reliance on Dr. Puri's opinion in combination with all this other evidence of record to support the sedentary RFC.

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. In sum, in formulating the physical RFC assessment, the ALJ considered the objective medical evidence, treatment history, allegations, and the opinions of non-treating physicians. The ALJ's RFC finding accounts for the limitations assessed by Drs. Puri and Miller, while also crediting Plaintiff's testimony in assessing additional environmental limitations to account for her seizure-related disorder. As

such, the sedentary RFC in this case is consistent with the record as a whole and is supported by substantial evidence.  Thus, remand is not warranted on the basis.

### 3.      Effects of Plaintiff's Mental Impairments

Plaintiff also argues the ALJ failed to consider the effects of Plaintiff's mental impairments in crafting the RFC even if non-severe.  (Dkt. No. 10 at 16-18.)  The Court agrees.

At step two, the ALJ determined Plaintiff's medically determinable mental impairments of anxiety and ADHD, considered singly and in combination, do not cause more than minimal limitations on her ability to perform basic mental work activities.  (T. at 15-16.)  Therefore, the ALJ determined they are not "severe" impairments.  *Id*. at 16.  In making this determination, the ALJ considered the four broad areas of mental functioning set forth in 20 C.F.R. Pt. 4, Subpt. P, App. 1—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id*. at 16.  Specifically, the ALJ found Plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace.  *Id*. at 16-17.  The ALJ found no limitations in interacting with others and adapting or managing oneself.  *Id*.

In this case, regardless of whether substantial evidence supports the step two analysis, remand is required because he did not consider the non-severe mental impairments when determining Plaintiff's RFC.  *See id.* at 16-20.  "It is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC."  *Rookey v. Comm'r of Soc. Sec.*, No. 7:14-CV-914 GLS, 2015 WL 5709216, at *4 (N.D.N.Y. Sept. 29, 2015).  Thus, even where "substantial evidence supports the ALJ's finding that [a claimant's] mental impairment was non[-]severe, it would still be necessary to remand . . . for further consideration [where] the ALJ failed to account [for the claimant's] mental limitations when

determining her RFC." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary

order) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable

impairments of which we are aware, including your medically determinable impairments that are

not 'severe [ ]' . . . when we assess your [RFC] . . .")); *see Schmidt v. Colvin*, No. 15-CV-2692,

2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) ("Because the ALJ failed to account for the

limitations imposed by Plaintiff's non-severe mental impairments, the Court remands for

consideration of those limitations in determining [p]laintiff's RFC."); *Jackson v. Colvin*, No. 14-

CV-0055, 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) ("[T]he ALJ failed to properly

consider [the] plaintiff's mental impairments, whether severe or non-severe, throughout the

entire five-step sequential evaluation.  As a result, the ALJ's RFC finding was not supported by

substantial evidence."); *Rookey*, 2015 WL 5709216, at *3 (reversing and remanding where the

ALJ failed to consider the plaintiff's non-severe mental impairments in determining the RFC);

*Salisbury v. Colvin*, No. 13-CV-2805, 2015 WL 5458816, at *44 (S.D.N.Y. Sept. 1, 2015) ("the

ALJ erred by not considering whether and to what degree plaintiff's mental impairments may

affect his RFC, however slightly."), *report-recommendation adopted by* 2015 WL 5566275

(S.D.N.Y. Sept. 21, 2015); *Johnson v. Colvin*, 12-CV-1273, 2013 WL 6145804, at *5 (N.D.N.Y.

Nov. 21, 2013) (remanding because "failure to consider [the plaintiff's] mental impairments and

abilities in assessing her RFC is legal error"); *Paz v. Comm'r of Soc. Sec.*, No. 14-CV-6885,

2016 WL 1306534, at *14 (E.D.N.Y. Mar. 31, 2016) (finding that where the ALJ "fails to

account for any functional limitations associated with the [non-severe] impairments in

determining the claimant's RFC, a court must remand for further administrative proceedings.").

Here, the Court agrees with Plaintiff that the ALJ erred by failing to consider Plaintiff's

mental impairments when formulating the RFC.  (T. at 17-20.)  The ALJ conducted an in-depth

analysis regarding Plaintiff's physical limitations when formulating the RFC.  *See id*.  However, with respect to Plaintiff's mental impairments, the ALJ mentioned only that Plaintiff "testified that her attention and concentration are intact on medication, but she has some distractibility due to pain."  *Id*. at 18.  The ALJ failed to conduct any analysis regarding Plaintiff's mental impairments or the impact that those impairments may have had on her ability to work.  *See id*. at 20-22.  More specifically, the ALJ's analysis omitted Plaintiff's documented clinical diagnoses of major depressive disorder recurring, panic disorder without Agoraphobia, and Attention Deficit Disorder, inattentive type.  (T. at 1003.)

Moreover, to the extent the ALJ found Plaintiff had no mental limitations, the ALJ does not provide an explanation to support the basis of that finding.  *See Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 741 (S.D.N.Y. 2018) (the ALJ made two references to the plaintiff's mental conditions in the RFC but did not explain how the RFC finding included consideration of the plaintiff's non-severe mental impairments); *Dixon v. Astrue*, 10-CV-5703, 2011 WL 4478493, at *12 (D.N.J. Sept. 26, 2011) ("the ALJ's failure to either consider Plaintiff's depression in evaluating her RFC or to offer a reason for discounting it was unsupported by substantial evidence").  Contrary to the Commissioner's assertion, the ALJ did not find Plaintiff's mental related limitations "to be non-existent or *de minimis*," such that any error resulting from his failure to address them in his RFC analysis would be harmless.  (Dkt. No. 13 at 14.)  Rather, as noted, the ALJ determined at step two that Plaintiff had "mild" limitations in two of the four functional areas: (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace.  (T. at 16-17.)  But the ALJ did not address those mild limitations when formulating Plaintiff's RFC.  *Id*. at 17-20.  *See, e.g.*, *Gomez v. Saul*, No. 19-CIV-9278, 2020 WL 8620075, at *25 (S.D.N.Y. Dec. 23, 2020) ("[E]ven if an ALJ finds

that a claimant's non-severe impairments result in only "mild" restrictions, the ALJ must analyze

those restrictions in determining the claimant's RFC."); *report-recommendation adopted sub*

*nom. Gomez v. Comm'r of Soc. Sec.*, 2021 WL 706744 (S.D.N.Y. Feb. 22, 2021).  Further, the

Court finds the Commissioner's passing assertion that "the ALJ gave at least some indication

that he did consider Plaintiff's mental impairment in formulating the RFC when he stated, 'The

following residual functional capacity analysis reflect the degree of limitation I have found I the

"paragraph B" mental function analysis[,]'" (Dkt. No. 13 at 14 n.4, citing T. at 17), to be

misplaced.  *See Mandy C. v. Saul*, No. 5:18-CV-982 (CFH), 2020 WL 1245348, at *6 (N.D.N.Y.

Mar. 16, 2020) ("Given the absence of any 'mental restrictions or limitations' in the RFC, the

ALJ's reference to the proper standard set forth in the regulations, without more, is insufficient

'lip service' and indicates the ALJ 'simply rel[ied] on his finding of non-severity as a substitute

for a proper RFC analysis.'" (alteration in original) (quoting *MacDonald v. Comm'r of Soc. Sec.*,

No. 17-CV-921, 2019 WL 3067275, at *1 (W.D.N.Y. July 11, 2019)) (other citations omitted).

As a result, Plaintiff's motion for judgment on the pleadings is granted because the ALJ

improperly failed to consider Plaintiff's non-severe mental impairments when evaluating his

RFC.  This is legal error.  Furthermore, the Court finds this error is harmful because there is at

least a reasonable likelihood that a different result could be reached if the ALJ properly

considered Plaintiff's non-severe mental impairments when evaluating the RFC.  *See Schaal v.*

*Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (noting remand is unnecessary "[w]here application of

the correct legal standard could lead to only one conclusion" (emphasis added)); *Johnson*, 817

F.2d at 986 ("[W]here application of the correct legal principles to the record could lead [only to

the same] conclusion, there is no need to require agency reconsideration.").  As Plaintiff points

out, "[g]iven that the ALJ's RFC finding does not include any mental nonexertional

impairments, the ALJ did not consider mental nonexertional limitations, and the [step four] finding that Plaintiff could perform her past semi-skilled work would be unsupported if Plaintiff was limited to unskilled work." (Dkt. No. 10 at 17.)  Consequently, remand is required on this ground.

On remand, the ALJ should consider all of Plaintiff's impairments in the RFC determination regardless of their severity.   The ALJ may find that Plaintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC – but he must explain his reasoning for doing so.  The ALJ should continue through steps four and five of the sequential evaluation as necessary and determine whether Plaintiff has the RFC to perform the requirements of her past relevant work or any other work.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 28, 2021
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

22